UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

WILLIAM SLOAN,

        Plaintiff,

  v.                                      Case No. 09-C-883

BRIAN J. BOHLMAN,

        Defendant.

**DECISION AND ORDER**

      William Sloan, a prisoner at Jackson Correctional Institution, brought this action under 42 U.S.C. § 1983 against Dr. Brian Bohlman for what Sloan alleges was an improper and sexually assaultive rectal examination performed at Oshkosh Correctional in 2007. At issue presently is the motion for judgment on the pleadings brought by Bohlman's insurer, the Wisconsin Health Care Liability Insurance Plan ("WHCLIP"). WHCLIP asserts that the malpractice policy it issued to Bohlman does not cover claims arising out of sexual misconduct, and thus it seeks a determination that it owes no duty to defend Bohlman in this action. For the reasons given below, the insurer's motion will be granted.

      At this stage, the allegations contained in the complaint control. Sloan alleges that on June 6, 2007, he complained to corrections officials that he was experiencing symptoms of a bladder infection and wanted antibiotics. (Compl., ¶ 9.) When he eventually saw the doctor, Defendant Bohlman, Bohlman offered to conduct a rectal examination. Plaintiff declined, but Bohlman "continually pushed" for an exam, and Plaintiff ultimately agreed to the exam after Bohlman

strongly recommended it. (Compl., ¶ 15.) Plaintiff was concerned about the doctor's persistence in pushing the examination, and his concern grew when the doctor appeared to want to perform the exam without wearing gloves and from in front of Sloan rather than behind. (Compl., ¶ 16.) At Plaintiff's request, Bohlman put gloves on and Plaintiff turned away from him while the exam was performed. While conducting the exam, Bohlman asked Sloan if it felt like he was going to ejaculate and moved his finger in and out of Plaintiff's anus. (Compl., ¶ 18.) Plaintiff believes that the exam was a "farce" conducted for Bohlman's sexual gratification, and he alleges Bohlman's sexually inappropriate touching constituted cruel and unusual punishment, in violation of the Eighth Amendment to the Constitution. (Compl., ¶ 24.)

The policy provided by WHCLIP covers injury "arising out of the rendering of or failure to render . . . 'professional services'." (Dkt. # 21, Ex. A, Policy at 1.) "Professional services" means "providing or failing to provide health care services to a patient." (*Id.* at 3.) The policy also excludes liability "arising out of the performance . . . of an intentional sexual act." (*Id.* at 1.) WHCLIP argues that Sloan's injury did not arise out of the providing of health care services, and even if it did, the exclusion for sexual acts would bar coverage.

Bohlman protests that there were legitimate reasons for a rectal exam: Sloan had complained of painful urination, bladder infection and testicular pain, and these ailments provide at least an arguable basis for Bohlman to have conducted the exam. As such, although he concedes that any claims for sexual misconduct are not covered by the WHCLIP policy, Bohlman asserts that he may be liable for medical negligence in the conducting of the rectal exam. That is, if Bohlman was wrong in his belief that a rectal exam was warranted by the facts, then that is a question of negligence that *is* covered by the policy. And because one claim is potentially covered, that gives rise to the insurer's duty to defend the entire lawsuit.

But Bohlman's argument ignores the relief Plaintiff is seeking. Plaintiff is asserting a claim under the Eighth Amendment arising from sexual assault. He alleges that the rectal exam was either wholly unwarranted or, even if it was arguably warranted, it was conducted in a fashion that went well beyond the definition of a medically indicated rectal exam. As such, his claim is based on an intentional sexual assault, *not* negligence. For instance, Plaintiff is not alleging that Bohlman's negligence caused him injury or that Bohlman failed to diagnose a condition because the exam was conducted poorly. He is instead alleging that Bohlman intentionally assaulted him based on a phony medical diagnosis. In a sense, Sloan's alleged injury arises out of the fact that Bohlman was *not* providing a professional service when he conducted the exam.

As noted earlier, Bohlman has attempted to couch his defense in terms of the medical appropriateness of conducting a rectal exam under the circumstances Sloan presented. But even if the question of the medical necessity of the rectal exam arises in Bohlman's defense of Sloan's § 1983 assault claim, that does not transform Sloan's claim into a malpractice *claim*. Under Wisconsin law, the question of whether an insurer has a duty to defend asks "whether, if the allegations are proved, the insurer would be required to pay the resulting judgment." *School District of Shorewood v. Wausau Insurance Co.,* 170 Wis. 2d 347, 364-65, 488 N.W.2d 82, 87-88 (1992). In other words, it is the Plaintiff's allegations that control, and if he proves his case here it will be proof of a § 1983 assault claim rather than anything related to the providing of professional services. Bohlman can defend this case by arguing that the exam was medically necessary and that his method of conducting it was medically appropriate. That would no doubt be probative of whether his touching of Sloan was an assault, *i.e.*, an Eighth Amendment violation. Even so, Bohlman's method of *defending* a sexual assault case does not transform the assault case into a case based on Bohlman's providing "professional services" to his patient. When the Plaintiff explicitly claims that

his injury arose from the physician's disregard of his professional duties and his intentional sexual assault, the physician cannot recast those allegations merely because his defense to the charge might involve considerations of professional necessity.[1]

Bohlman cites an Arizona case holding to the contrary. In *St. Paul Fire & Marine Ins. Co. v. Asbury,* the Arizona Court of Appeals found that a similar policy covered injuries arising out of the acts of a physician who had engaged in "intentional and improper manipulations" during several gynecological exams he performed. 720 P.2d 540, 541 (Ariz. Ct. App. 1986). The court concluded that because the injuries were made possible only because of the doctor's position and were intertwined with his providing of professional services, the injuries were covered by the professional services policy. (No applicable exclusions applied in that case.)

Even if *Asbury* were controlling, which it is not, it is distinguishable. There, the defendant doctor was performing routine gynecological exams when he assaulted the plaintiffs, and the court concluded that the exam and the assault were intertwined with the doctor's provision of medical services. "The claims of Dr. Asbury's patients that he manipulated their clitorises while performing routine gynecological examinations, if true, was tortious conduct committed while providing professional services and covered by his insurance policy." *Id.* at 542. But in *Asbury* no one disputed that the exams themselves were medically appropriate, whereas here that is the crux of the allegation: the complaint clearly alleges that the rectal exam itself was a "farce" and totally unnecessary. As such, Sloan considers the *entire* rectal exam to be a constitutional tort. It was a

---

[1]Judge Crabb recognized this in a similar case brought against Defendant Bohlman: "In a vacuum, some of the rectal examinations may have seemed to have a legitimate purpose . . . [but] any doubt about their legitimacy is swept away by plaintiffs' broad allegation that 'the sexual touching alleged' was 'not for a legitimate medical reason but rather for Bohlmann's sexual gratification.'" *B.A. v. Bohlmann,* 09-CV-346, 2010 WL 597455 (W.D. Wis. 2010).

ruse to enable Bohlman to violate the Eighth Amendment. Thus, even if I were to adopt the "inextricably intertwined" analysis from *Asbury*, I could not say that the tort alleged here was "intertwined" with the otherwise proper rectal exam because the constitutional tort *was* the rectal exam. Although Dr. Bohlman clearly believes he can beat the case by showing that his actions were medically appropriate, Sloan's complaint, which controls, asserts injuries having nothing to do with the providing of professional services.

In any event, as WHCLIP notes, Arizona's is a minority approach that has not been followed in Wisconsin. As one commentator has noted, "[m]ost of the majority rule decisions find that the act of molestation is not the 'rendering of professional services' as contemplated by the policies." David S. Florig, *Insurance Coverage for Sexual Abuse or Molestation,* 30 Tort & Ins. L.J. 699, 724 (1995). It should not be surprising that most courts would find that the act of molesting a patient is not "providing . . . health care services to a patient," and that is essentially what the Wisconsin Court of Appeals found in the *Herget* case. *Steven G. by Robert G. v. Herget,* 178 Wis.2d 674, 505 N.W.2d 422 (Wis. Ct. App. 1993). There, a dentist repeatedly applied nitrous oxide to a teenaged patient and molested the patient while the patient was unconscious. The Court of Appeals concluded that the dentist's malpractice policy did not cover his acts because they were not "professional services." Although the dentist used his office, his position, and his dental tools (particularly the nitrous oxide) to accomplish his assaults, that did not bring them within the scope of the liability policy for professional services.

The analogy to *Herget* is strong. While the dentist used gas to subdue his patient, here the doctor (according to the complaint) used his position of influence to encourage his patient to undergo a rectal exam and then, once the exam was underway, he exploited the patient's prone position and his handicap to move his finger back and forth. (Sloan is a paraplegic.) And in neither

case is the plaintiff alleging an injury arising out of *professional* services – the injury arises out of the *departure* from the provision of professional services consisting of acts of sexual gratification. Given the allegations in the complaint, it is difficult to envision how Bohlman's conduct arose out of the provision of professional services.

Finally, even if the injuries alleged here arose out of professional services, the exclusion would no doubt apply to bar coverage. The exclusion precludes liability "arising out of the performance . . . of an intentional sexual act." (Dkt. # 21, Ex. A, Policy at 1.) That is exactly what the complaint alleges: an intentional sexual act. Bohlmann persists in his argument, detailed above, that "there are factual allegations in the complaint which support a negligence claim," and thus even if the sexual assault allegation is excluded from coverage, the insurer has a duty to defend against negligence claims. (Bohlmann Br. at 15.) But once again Bohlmann is not in the position of rewriting the Plaintiff's own complaint. The only injury alleged in the complaint is that which arose out of the allegedly "intentional sexual act" performed by Bohlmann, and that is exactly what the exclusion covers.

For the reasons given above, WHCLIP's motion for judgment on the pleadings is **GRANTED**, as WHCLIP has no duty to defend or to provide coverage.

**SO ORDERED** this   19th   day of May, 2010.

                                                     s/ William C. Griesbach
                                                     William C. Griesbach
                                                     United States District Judge