UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

WILLIAM SLOAN,
        Plaintiff,

v.                                                 Case No. 09-C-883

BRIAN BOHLMANN,
        Defendant.

**MEMORANDUM AND ORDER**

Plaintiff William Sloan lodged a civil rights complaint under 42 U.S.C. § 1983, alleging that his civil rights were violated. Specifically, Plaintiff alleges that in 2007 the prison doctor at Oshkosh Correctional, where he incarcerated at the time, conducted an improper rectal exam that was designed for the doctor's own sexual gratification. Defendant Brian Bohlmann has now moved for summary judgment. For the reasons given below, the motion will be denied.

Plaintiff Sloan is a paraplegic with several medical problems. On June 6, 2007, Plaintiff saw Dr. Bohlmann with symptoms of a bladder infection and back pain. He also stated that he wanted to obtain parts for his wheelchair. (Yanacheck Aff., Ex. B at 1.) During the exam, Dr. Bohlmann suggested that a rectal exam would be indicated. Sloan initially refused, and Bohlmann documented "declined rectal" in his notes. (Bohlmann Aff., Ex. A.) But Bohlmann ultimately persuaded him that it was necessary, and Sloan acquiesced. According to Sloan, Bohlmann approached him from the front and was about the begin the exam when Sloan asked, "aren't you going to put on a glove?" (Sloan Decl., ¶¶ 31-32.) Bohlmann then "reluctantly" put on a glove and began the exam. During the exam, which lasted roughly three minutes, Bohlmann asked Sloan questions like "how does that

feel?" and "does that make you feel like you are going to ejaculate?" (*Id.* at ¶¶ 36-37.) Bohlmann removed his finger and then re-inserted it and asked, "how about that?" Sloan states that when the exam was finished, Bohlmann did not report on any findings or discuss it with him in any way. Sloan had undergone rectal exams in the past, and he states that none of them had been similar to the one Bohlmann performed. Given the questions Bohlmann asked and the nature of the exam, Sloan believes the touching was an assault done for Bohlmann's own gratification rather than for legitimate medical reasons.

Sloan, however, did not immediately report the alleged assault to prison authorities. He later learned from another inmate that criminal charges had been filed against Bohlmann based on similar allegations made by other inmates, and in September 2008 (fifteen months later) he wrote a letter to the police. In December he filed a complaint with the Department of Corrections, but that complaint was dismissed. He then filed this lawsuit, and this Court appointed counsel.

Summary judgment is proper if the evidence submitted shows that there are no genuine issues of material fact. Fed. R. Civ. P. 56. Bohlmann argues that Sloan's case is based upon speculation and arises out of an opportunistic copycat motive. In Bohlmann's view, Sloan never thought anything was unusual about the exam until Sloan learned about other allegations and decided to file an action on his own. Bohlmann's story is much different. First, he states that he normally does not wear gloves for the initial (external) portion of a genital / rectal exam, but he did so here at Plaintiff's request. He did not, in other words, have any intent to conduct a rectal exam without gloves, and nothing should be inferred from Plaintiff's statement that Bohlmann was not initially wearing a glove.

Second, Bohlmann asserts that the nature of a rectal exam requires the insertion and moving

2

about of the physician's finger to palpate the prostate. (Bohlmann Aff., ¶ 27.) He states that when an infection is present in the prostate, some men experience a sensation similar to ejaculation, and that is why he might have mentioned ejaculation to Sloan. Bohlmann explains that he "customarily" alerts patients that a discharge of fluid may occur so that they know it is a normal occurrence, and Sloan has no means of denying this. (Bohlmann Aff., ¶ 26.) Sloan did, in fact, produce a "cloudy" prostate secretion, which in Bohlmann's view suggested prostatitis, an inflammation of the prostate gland sometimes caused by bacterial infection. Bohlmann's notes indicate that the prostate was slightly "boggy," which also caused him to suspect infection. (*Id.,* Ex. B.) Bohlmann prescribed antibiotics. In sum, Bohlmann believes he has provided a legitimate medical reason for each of his actions, and because Plaintiff has not named a medical expert, he cannot create a genuine issue of material fact about the propriety of Bohlmann's conduct.

At the outset, I am satisfied that the absence of a medical expert means that Sloan cannot succeed in showing that the rectal exam was not warranted by his symptoms. There is a factual dispute about whether Sloan told Bohlmann he had testicular pain as well as back pain and a bladder infection, but even resolving that dispute in Sloan's favor does not mean that the exam was illegitimate. Bohlmann has explained that back pain is often referred from the prostate, and given Plaintiff's history of bladder infections Bohlmann believed the rectal exam was warranted. This was confirmed by the fact that Sloan actually had a prostate issue, which Bohlmann diagnosed and treated. It is true that the absence of medical expert testimony is not always fatal in § 1983 cases involving treatment. For example, when a particular course of medical action is obvious even to a layman, a plaintiff will not need an expert to testify. But this is not one of those cases. The symptoms presented suggest to a layman that a rectal exam might have been warranted, and

3

Bohlmann has explained why he conducted the exam. The Plaintiff's own contrary belief does not suffice to create a genuine issue of material fact on that point.

But that does not end matters. It is possible for a physician to engage in tortious activity even while performing an otherwise legitimate medical procedure. In *St. Paul Fire & Marine Ins. Co. v. Asbury,* for example, the physician was alleged to have molested female patients during the course of otherwise legitimate gynecological exams. 720 P.2d 540, 541 (Ariz. Ct. App. 1986). The exams themselves may have been medically justified, but the physician's method of conducting them was not. Thus, the remaining question here is whether Bohlmann's conduct during the exam – an exam we must assume was medically indicated – was proper.

In many cases, the absence of a medical expert would preclude a layman plaintiff from successfully challenging the method a physician used while conducting an exam, just as it precludes Sloan from challenging the need for the exam in the first place. Here, however, the Plaintiff's allegations are such that a lay jury could conclude that the way the exam was conducted was improper. In particular, Plaintiff asserts that Bohlmann removed and re-inserted his finger seven to ten times in an "in-and-out motion." (Sloan Decl., ¶¶ 36-37.) Bohlmann has explained that some finger movement during the exam is inevitable, but he does not have an answer for Plaintiff's "in-and-out" allegation. Moreover, while Bohlmann was doing this motion, according to Sloan, Bohlmann was asking "how does that feel?" and whether Sloan felt like ejaculating. The exam lasted about three minutes, which Plaintiff believes was longer than required. Plaintiff's medical condition has caused him bowel problems and made him no stranger to rectal exams, and he states

4

that he had never had an exam conducted like that.[1]

I am satisfied that the above allegations, if believed by a jury, could result in a verdict against Bohlmann. Even though he has cited medical reasons for his conduct, this is the sort of case in which an individual's words and actions must be analyzed with the nuance available only to a factfinder. Bohlmann's actions and comments may have a perfectly legitimate reason, but a jury could also conclude that the medical reasons now articulated were merely pretextual. Even without medical expert testimony on Sloan's side, a jury could conclude that re-inserting a finger seven to ten times while asking how it felt was an act not performed for any legitimate medical need. After all, although expert testimony might serve as a defense to Sloan's allegations, ultimately it is for a jury to determine the weight and credibility to be given the expert's testimony. *Davis v. Combustion Engineering, Inc.,* 742 F.2d 916, 919 (6th Cir. 1984). And the fact that Sloan waited more than a year to file a complaint does not undermine its truthfulness; history shows that countless victims of sexual abuse make their own reports only after hearing about other victims. In short, a court cannot look at this record and conclude there was no chance that Bohlmann's conduct was a sexual assault. For these reasons, the motion for summary judgment must be **DENIED**. The clerk will schedule a telephone conference to discuss scheduling a trial and / or possible efforts to achieve resolution outside of court.

**SO ORDERED** this 3rd day of March, 2011.

/s William C. Griesbach
William C. Griesbach
United States District Judge

---

[1] Plaintiff also states that he talked to other medical professionals about the proper way of conducting a prostate exam, but his testimony on those topics would be hearsay.